# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SAQUETA WILLIAMS,

        Plaintiff,

v.

ROC NATION, LLC; ROBERT RIHMEEK
WILLIAMS, a/k/a MEEK MILL; SHAWN
COREY CARTER, a/k/a JAY-Z; WENNER
MEDIA, LLC; AND AMAZON.COM, INC.,

        Defendants.

Civil Action No. 2:20-cv-00122-NIQA

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
## ROC NATION, LLC, ROBERT RIHMEEK WILLIAMS,
## AND SHAWN COREY CARTER'S MOTION TO DISMISS

Ashley E. Shapiro (I.D. No. 209290)
BUCHANAN INGERSOLL & ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia Pennsylvania 19102
Telephone: 215-665-8700
ashley.shapiro@bipc.com

Alex Spiro (*pro hac vice*)
Ellyde R. Thompson (*pro hac vice*)
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010
Telephone: 212-849-7000
alexspiro@quinnemanuel.com
ellydethompson@quinnemanuel.com

Derek L. Shaffer  (*pro hac vice*)
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone:  202-538-8000
derekshaffer@quinnemanuel.com

*Attorneys for Defendants Roc Nation, LLC,*
*Robert Rihmeek Williams, and Shawn Corey Carter*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ......................................................................................3

    A.    The *Free Meek* Documentary ................................................................3

    B.    Plaintiff Saqueta Williams And The Allegedly Defamatory Statements.................5

    C.    The Instant Action.....................................................................................7

STANDARD OF REVIEW ........................................................................................7

ARGUMENT ..............................................................................................................8

I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION......................8

    A.    The Documentary As A Whole Is Not Reasonably Capable Of The
Defamatory Meaning Alleged By Plaintiff And Defendants Have Not
Made Any False Statement Of Fact ...........................................................9

        1.    Taken In Context, The Statements Are Not Capable Of A
Defamatory Meaning ......................................................................9

        2.    The Complaint Fails To Adequately Plead The Falsity Of The
Statements .....................................................................................14

        3.    The Statements Are Non-Actionable Opinion ...........................................16

    B.    The Complaint Fails To Plead That Defendants Acted With Actual Malice ........17

        1.    The Actual Malice Standard Applies To Plaintiff's Defamation
Claims ...........................................................................................19

        2.    Plaintiff Has Not Plausibly Pleaded Actual Malice ................................22

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS ..................................................24

CONCLUSION..........................................................................................................25

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Abdellatif v. Alza Wrae Indus. Co.*,
2019 WL 1284689 (E.D. Pa. Mar. 20, 2019) ........................................................................ 15

*Air Wisconsin Airlines Corp. v. Hoeper*,
571 U.S. 237 (2014) ....................................................................................................... 14, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 7, 8, 22, 23

*Baldassare v. State of N.J.*,
250 F.3d 188 (3d Cir. 2001) ................................................................................................ 20

*Balletta v. Spadoni*,
47 A.3d 183 (Pa. Commw. Ct. 2012) .................................................................................. 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 8, 22

*Bell v. Mayview State Hosp.*,
853 A.2d 1058 (Pa. Super. Ct. 2004) .................................................................................... 9

*Bell v. Sullivan*,
2017 WL 5518005 (E.D. Pa. Nov. 16, 2017) ...................................................................... 15

*Berkery v. Gudknecht*,
2018 WL 3549228 (E.D. Pa. July 24, 2018) ....................................................................... 22

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) .................................................................................................. 3

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ................................................................................................ 3

*Channel 4, KGBT v. Briggs*,
759 S.W.2d 939 (Tex. 1988) ............................................................................................... 24

*Commonwealth v. Williams*,
215 A.3d 1019 (Pa. Super. Ct. 2019) ............................................................................ 3, 4, 5

*Coughlin v. Westinghouse Broadcasting & Cable, Inc.*,
603 F. Supp. 377 (E.D.Pa. 1985) ........................................................................................ 19

*Day v. Borough of Carlisle*,
2006 WL 1892711 (M.D. Pa. July 10, 2006) ...................................................................... 20

*Earley v. Gatehouse Media Penn. Holdings, Inc.*,
  2015 WL 1163787 (M.D. Pa. Mar. 13, 2015) ....................................... 22

*Elia v. Erie Ins. Exch.*,
  634 A.2d 657 (Pa. Super. Ct. 1993) .................................................. 17

*Emekekwue v. Offor*,
  26 F. Supp. 3d 348 (M.D. Pa. 2014) ...................................... 10, 13, 16

*Frankhouser v. Clearfield Cty. Career & Tech. Ctr.*,
  2019 WL 1259570 (W.D. Pa. Mar. 19, 2019) ....................................... 9

*Govito v. W. Jersey Health Sys., Inc.*,
  753 A.2d 716 (N.J. Super. Ct. App. Div. 2000) ................................... 24

*Gray v. Udevitz*,
  656 F.2d 588 (10th Cir. 1981) ......................................................... 19

*Hoppe v. Hearst Corp.*,
  53 Wash. App. 668 (Wash. Ct. App. 1989) ......................................... 24

*Howard v. Arconic Inc.*,
  395 F. Supp. 3d 516 (W.D. Pa. 2019) ................................................. 4

*Hudak v. Times Pub. Co.*,
  534 F. Supp. 2d 546 (W.D. Pa. 2008) .......................................... 10, 17

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) ........................................................................ 24

*James v. City of Wilkes-Barre*,
  700 F.3d 675 (3d Cir. 2012) ............................................................. 8

*Kendall v. Daily News Pub. Co.*,
  716 F.3d 82 (3d Cir. 2013) .................................................. 22, 23, 24

*Kurowski v. Burroughs*,
  994 A.2d 611 (Pa. 2010) ................................................................ 14

*Kuwait & Gulf Link Transp. Co. v. Doe*,
  216 A.3d 1074 (Pa. Super. Ct. 2019) ................................................. 9

*Lawson v. Pennsylvania SPCA*,
  124 F. Supp. 3d 394 (E.D. Pa. 2015) ................................................. 9

*Leder v. Shinfeld*,
  609 F. Supp. 2d 386 (E.D. Pa. 2009) ................................................. 9

*Lee v. TMZ Prods., Inc.*,
  710 F. App'x 551 (3d Cir. 2016) ............................................................. 22

*Lekich v. Int'l Bus. Machines Corp.*,
  469 F. Supp. 485 (E.D. Pa. 1979) .......................................................... 14

*Leveto v. Lapina*,
  258 F.3d 156 (3d Cir. 2001) ................................................................... 14

*Livingston v. Murray*,
  612 A.2d 443 (Pa. Super. Ct. 1992)........................................................ 12

*Marcone v. Penthouse Int'l Magazine For Men*,
  754 F.2d 1072 (3d Cir. 1985) ................................................... 18, 21, 23

*Marier v. Lance, Inc.*,
  2009 WL 297713 (3d Cir. Feb. 9, 2009) ................................................ 15

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)........................................................................... 14, 15

*Mathias v. Carpenter*,
  587 A.2d 1 (Pa. Super. Ct. 1991) ............................................................. 9

*McCafferty v. Newsweek Media Group, Ltd.*,
  2020 WL 1862250 (3d Cir. Apr. 14, 2020) ...................................... 16, 22

*McDowell v. Paiewonsky*,
  769 F.2d 942 (3d Cir. 1985) .................................................. 20, 21, 22, 23

*Mercer v. City of Cedar Rapids*,
  308 F.3d 840 (8th Cir. 2002) ................................................................. 19

*Merriweather v. Philadelphia Newspapers Inc.*,
  61 Pa. D. & C. 4th 423 (Com. Pl. 2002) ................................................ 13

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ......................................................... 18, 22

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)................................................................................... 16

*Mollett v. Leith*,
  2011 WL 5407359 (W.D. Pa. Nov. 8, 2011) ............................................ 4

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)......................................................................... 18, 19

*O'Donnell v. Yanchulis,*
　　875 F.2d 1059 (3d Cir. 1989) ............................................................ 20

*Pace v. Baker-White,*
　　2020 WL 134316 (E.D. Pa. Jan. 13, 2020) .................................. 17, 18, 22

*Parks Miller v. Cantorna,*
　　2016 WL 2752633 (M.D. Pa. May 11, 2016) ...................................... 25

*Parnell v. Booth Newspapers, Inc.,*
　　572 F. Supp. 909 (W.D. Mich. 1983) .................................................. 24

*Philadelphia Newspapers, Inc. v. Hepps,*
　　475 U.S. 767 (1986)...................................................................... 9, 14

*Pierce v. Capital Cities Commc'ns, Inc.,*
　　427 F. Supp. 180 (E.D. Pa. 1977) ...................................................... 19

*Redco Corp. v. CBS, Inc.,*
　　758 F.2d 970 (3d Cir. 1985) .............................................................. 16

*Remick v. Manfredy,*
　　238 F.3d 248 (3d Cir. 2001) .............................................................. 10

*Resnick v. Manfredy,*
　　52 F. Supp. 2d 462 (E.D. Pa. 1999) .................................................... 16

*Rosenblatt v. Baer,*
　　383 U.S. 75 (1966)........................................................................... 19

*Rubin v. CBS Broad. Inc.,*
　　170 A.3d 560 (Pa. Super. Ct. 2017).................................................... 20

*Salerno v. Philadelphia Newspapers, Inc.,*
　　546 A.2d 1168 (Pa. Super. Ct. 1988).................................................. 25

*Santiago v. Warminster Twp.,*
　　629 F.3d 121 (3d Cir. 2010) ................................................................ 8

*Sarkees v. Warner–West Corp.,*
　　37 A.2d 544 (Pa. 1944) .................................................................... 12

*Schiavone Constr. Co. v. Time, Inc.,*
　　847 F.2d 1069 (3d Cir. 1988) ...................................................... 18, 22

*Snyder v. Phelps,*
　　562 U.S. 443 (2011).......................................................................... 24

*Spector Gadon & Rosen, P.C. v. Fishman*,
   2015 WL 1455692 (E.D. Pa. Mar. 30, 2015) .................................................................. 3

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ................................................................................................. 18, 19

*Thomas Merton Ctr. v. Rockwell Int'l Corp.*,
   442 A.2d 213 (Pa. 1981) ................................................................................... 10, 12, 13

*Time, Inc. v. Pape*,
   401 U.S. 279 (1971) ......................................................................................................... 19

*ToDay's Housing v. Times Shamrock Commc'ns*,
   21 A.3d 1209, 1216 (Pa. Super. Ct. 2011) .............................................................. 13, 15

*Toney v. Chester Cty. Hosp.*,
   36 A.3d 83 (Pa. 2011) ...................................................................................................... 25

*Tucker v. Fischbein*,
   237 F.3d 275 (3d Cir. 2001) ..................................................................................... 22, 23

*Wolgin v. Smith*,
   1996 WL 745285 (E.D. Pa. Dec. 19, 1996) ..................................................................... 16

### Statutory Authorities

42 Pa.C.S. § 8343(a) ................................................................................................................ 9

### Rules and Regulations

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 1

### Additional Authorities

*Cop Charged after Making Gun Threats: Philadelphia Police*, Patch.com (June 9, 2017),
   https://patch.com/pennsylvania/philadelphia/cop-charged-after-making-gun-threats-
   philadelphia-police .................................................................................................... 21

*Philly Cop Arrested for Off-Duty Bar Incident*, Phila. Inquirer (June 9, 2017),
   https://www.inquirer.com/philly/news/philly-cop-arrested-for-off-duty-bar-incident-
   20170609.html ........................................................................................................... 21

*Philadelphia Police Officer Accused of Making Threats, Pointing Gun*, 6ABC (June 20, 2017),
   https://6abc.com/philadelphia-news-officer-arrest-police-arrested-cop/2078645/ ................ 21

*Philly Cops on the DA's 'Do Not Call' List*, Phila. Inquirer (Mar. 6, 2018),
   https://www.inquirer.com/philly/news/crime/29-philly-officers-do-not-call-list-krasner-
   20180306.html ........................................................................................................... 11

*Philly Police Officer Allegedly Pulled Out Gun in Off-Duty Bar Incident*, Philly Voice (June 11, 2017), https://www.phillyvoice.com/philly-police-officer-allegedly-pulled-out-gun-duty-bar-incident ................................................................................................................................... 21

*Police: Officer Arrested after Threatening People with Gun at Bar*, 3CBS Philly (June 9, 2017), https://philadelphia.cbslocal.com/2017/06/09/officer-arrested-to-be-dismissed ..................... 21

Restatement 2d of Torts § 566A ................................................................................................ 16

*The Full List of Philadelphia's 66 Problem Cops*, Phila. Inquirer (Mar. 16, 2018), https://www.inquirer.com/crime/inq/full-list-philadelphias-66-problem-cops-20180316.html ............................................................................................................................................... 11

*Under Court Order, District Attorney Krasner Releases List of Tainted Police*, Phila. Inquirer (Mar. 6, 2018), https://www.inquirer.com/philly/news/larry-krasner-philadelphia-police-tainted-misconduct-secret-list-20180306.html .......................................................................... 4

Defendants Roc Nation, LLC, Robert Rihmeek Williams, and Shawn Corey Carter ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiff Saqueta Williams pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

This case concerns the five-part documentary series *Free Meek*, which shines light on injustices in the criminal justice system through the story of Defendant Robert Rihmeek Williams, a rapper known as Meek Mill. As part of their engagement in broad criminal justice reform efforts, Defendants Roc Nation and Shawn Corey Carter (known as JAY Z) sought to spotlight through the documentary how Philadelphia police, prosecutors, and courts failed to serve the ends of justice in the case of Meek Mill, who was arrested in Philadelphia as a teenager. The documentary traces Meek Mill's journey through the criminal justice system, from his violent arrest, to his flawed trial and conviction, to his onerous probation, to the probation system that repeatedly threatened to send Meek Mill back to prison for any misstep, no matter how small. The story told by the documentary is by no means unique to Meek Mill. Instead, Meek Mill's story illustrates the ways in which the criminal justice system lets down young black men, compounding obstacles they already face in this society.

Without engaging the larger work of *Free Meek*, the Complaint in this case faults two tiny snippets from Episode 4 (of five) of the series. There, the documentary examines the Philadelphia District Attorney's "Do Not Call" list, a listing of dozens of police department employees who, for various reasons, prosecutors should "not call" as witnesses in criminal prosecutions. In doing so, the documentary briefly flashes a small photo of Plaintiff Saqueta Williams, a former Philadelphia police officer, along with the caption from a news article that describes criminal charges she faced while an officer for "simple assault" and "terroristic threats." Plaintiff does not contest that she was placed on the "Do Not Call" list. Nor does she contest that she was charged

1

with crimes in connection with an incident in which, while she was off-duty, she publicly brandished her weapon in a dispute with members of the public.  Instead, Plaintiff's sole gripe is with the documentary's references to "dirty" and "dishonest" cops on the "Do Not Call" list and the statement that officers who had lied were on the list; those are what allegedly defamed her and caused her emotional distress.  Her claims are invalid, irreconcilable with the First Amendment, and subject to dismissal.

As to the defamation claims, Plaintiff fails to satisfy the pleading standard for alleging falsity or defamatory meaning.  Plaintiff pleads as true the fact that she was on the Do Not Call list, and the documentary discloses the precise reason Plaintiff was placed on the list.  No reasonable viewer of the documentary would view the statements, taken in context, to assert that Plaintiff was placed on the Do Not Call list specifically because she lied.  Defamation law requires examining a publication's full context to avoid hypercritical claims that would otherwise chill constitutionally-protected speech.  And no reasonable viewer would equate generic, attenuated statements about dishonesty surrounding an undifferentiated set of names with the specific reason why Plaintiff herself was listed on the Do Not Call list, especially not when the relevant excerpt expressly connected her inclusion to her prosecution for simple assault and making terroristic threats.  In any event, because the statements relate to Plaintiff's conduct as a police officer, the First Amendment requires that Plaintiff plead that the statements were published with actual malice.  But the Complaint offers no allegations establishing that Defendants knew or recklessly disregarded the falsity of statements about Plaintiff.  And no allegation establishes that Defendants expected anyone would interpret the statements as Plaintiff alleges.  A plausible allegation of actual malice is constitutionally required but altogether missing here.

As to the negligent infliction of emotional distress claim, it is no less foreclosed by the First Amendment and fails for the additional reason that Defendants owed no duty to Plaintiff.

The *Free Meek* documentary's examination of pressing social justice issues is at the heart of what the First Amendment protects. Letting Plaintiff nitpick mere seconds of footage by characterizing them in ways that defy both the statements' literal terms and larger context would imperil the ability of documentarians to dig deep and report broadly on pressing issues of our time and take hard-hitting messages to the public. The Complaint should be dismissed.

## FACTUAL BACKGROUND

### A.     The *Free Meek* Documentary

In 2019, Amazon began airing the five-part documentary series *Free Meek* on its streaming service. Compl. ¶ 42. The series centers on Robert Rihmeek Williams, known professionally as Meek Mill, a successful professional rapper born and raised in Philadelphia; it focuses on his ongoing interaction with the criminal justice system. In 2007, as a teenager, Meek Mill was arrested and faced trial in Philadelphia for offenses including illegal possession of firearms and controlled substances. *See Commonwealth v. Williams*, 215 A.3d 1019, 1022 (Pa. Super. Ct. 2019). During his criminal trial, only one witness testified for the prosecution, a Philadelphia police officer.[1] *Id.* at 1022; Spiro Decl. Ex. A at 36:30–37:45. Following the bench trial, the court

---

[1] Plaintiff has incorporated by reference the documentary *Free Meek*. In support of the Motion, Defendants have provided a DVD with a digital copy of Episode 4 of the series (Decl. of Alex Spiro ("Spiro Decl.") Ex. A). A court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). A complaint incorporates by reference when it "specifically mentions" or relies on a document. *Spector Gadon & Rosen, P.C. v. Fishman*, 2015 WL 1455692, at *6 (E.D. Pa. Mar. 30, 2015), *aff'd*, 666 F. App'x 128 (3d Cir. 2016). "[T]he rule seeks to prevent . . . the situation in which a plaintiff is able to maintain a claim . . . by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not [actionable]." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

found Meek Mill guilty on seven counts and sentenced him to up 23 months in prison and ten years of probation. *Williams*, 215 A.3d at 1022.

The documentary *Free Meek* focuses on Meek Mill's post-conviction attempts to complete his probation and avoid re-incarceration by adhering to strict probationary restrictions while maintaining a successful and growing music career. Defendants Shawn Carter and Roc Nation were involved in producing the project with participation from Meek Mill.

In Episode 4 of *Free Meek*, titled "Filthadelphia," the documentary explores the release of a secret list containing the names of police officers whom the Philadelphia District Attorney's Office refused to allow to testify at trial. *See generally* Spiro Decl. Ex. A. The list compiles the names of "police officers who have histories of arrests, disciplinary actions, or providing false testimony," and is known as the "Do Not Call List" because the "Philadelphia District Attorney directed employee prosecutors not to call some of the police officers whose names appear on the list as witnesses to offer testimony in criminal prosecutions." Compl. ¶¶ 32–35. In 2018, the Do Not Call list, which included the names of 66 police officers, was ultimately disclosed to the public. *See* Compl. ¶ 47; *see also* Spiro Decl. Ex. B (*Under Court Order, District Attorney Krasner Releases List of Tainted Police*, Phila. Inquirer (Mar. 6, 2018), https://www.inquirer.com/philly/news/larry-krasner-philadelphia-police-tainted-misconduct-secret-list-20180306.html).[2] Among those listed was the officer who arrested Meek Mill and

---

(3d Cir. 1997) (Alito, J.). Here, Plaintiff refers to the *Free Meek* documentary as the basis for jurisdiction and the source of the allegedly defamatory statements at the core of her claims. *See* Compl. ¶¶ 14–15, 42–63, 74–76, 78–80, 90–93, 95–97, 100–03, 105–07, 110–12, 114–16. She also quotes directly (albeit selectively) from the film. *See* Compl. ¶¶ 45–47. Accordingly, the Court may consider the documentary generally and Episode 4 specifically for present purposes. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

[2]  The Court may take judicial notice of news articles. *See Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 570 n.14 (W.D. Pa. 2019) (taking judicial notice of news article); *Mollett v. Leith*, 2011

testified against him as the sole witness in his trial.  *See* Spiro Decl. Ex. A at 36:23–37:45.

At the time the Do Not Call list became public, Meek Mill's struggle over the terms of his probation was already well-publicized.  Meek Mill's ten-year probationary sentence had been extended multiple times, and in 2017, the court ordered Meek Mill's probation revoked and sent him to prison.  *Williams*, 215 A.3d at 1022.  Episode 4 recounts the investigation into Meek Mill's original arrest and the public outcry for the overturn of his original conviction following revelation of the Do Not Call list.  Compl. ¶¶ 43, 45–47.  Thanks to previously unpublicized information from the Do Not Call list—specifically information on the testifying officer's record of corruption—Meek Mill obtained post-conviction relief in the form of a new trial.  *See* Spiro Decl. Ex. A at 38:16–39:18; *Williams*, 215 A.3d at 1022.  The episode features commentary from interviews with numerous relatives, journalists, legal analysts, members of the rap community, and others, including Paul Solotaroff, a journalist for Rolling Stone, and Bradley Bridge, a lawyer for the Defender Association of Philadelphia.  Compl. ¶¶ 10–11, 45–48; *see* Spiro Decl. Ex. A.

### B.    Plaintiff Saqueta Williams And The Allegedly Defamatory Statements

Plaintiff was also among the officers on the Do Not Call list.  She joined the ranks of the City of Philadelphia police force in 2010.  Compl. ¶ 20.  As pleaded in the Complaint, on January 25, 2017, Plaintiff was involved in a violent altercation with four unidentified individuals during which she drew her weapon while off duty.  Compl. ¶¶ 21, 23–27.  In June 2017, Plaintiff was arrested and charged with several crimes arising from the off-duty confrontation, including simple assault, possession of an instrument of crime, and recklessly endangering another person.  Compl.

---

WL 5407359, at *3 (W.D. Pa. Nov. 8, 2011) ("[T]he Third Circuit has held that a court may, in certain circumstances, also take judicial notice of information 'in the public realm,' such as news reports, relating to a particular issue in a case."), *aff'd sub nom.* 511 F. App'x 172 (3d Cir. 2013). In addition, Spiro Decl. Ex. D reproduces the District Attorney's list (listing Plaintiff as "Sequeta Williams"), which the Complaint incorporates by reference. *See supra*, n.1.

¶ 29.  Plaintiff's name was added to the Do Not Call list "as a result of criminal charges having been lodged against" her.  Compl. ¶¶ 38–39.  In 2019, after the Do Not Call list became public, Plaintiff was acquitted.  Compl. ¶ 30.

In introducing the Do Not Call list during Episode 4, journalist Paul Solotaroff states during an on-camera interview:  "Now there is a new District Attorney in town, and [in] just the last couple of months we have been learning from the District Attorney's Office about a list of dirty and dishonest cops."  Compl. ¶ 46; Spiro Decl. Ex. A at 34:59–35:02, 35:15–35:25.  Directly following Solotaroff's statement, the documentary cuts to a clip from WPVI's local Philadelphia news program *Inside Story*.  The clip states:  "A court order forces the Philadelphia District Attorney to make public a list of officers so troubled prosecutors will not call them to testify about their cases.  ***Assault***, drug dealing, mishandling evidence, lying to authorities.  And that's just ***a partial list*** of what's on there."  Spiro Decl. Ex. A at 35:28–44 (emphasis added).  As the WPVI reporter speaks, the documentary shows the *Philadelphia Inquirer* article reporting on the list, including the photos and names of officers on the list.

The documentary then shows a clip of Bradley Bridge further discussing the Do Not Call list in another on-camera interview, stating:  "The DA's Office generated a specific list that has 66 names of police officers on it.  There have been findings by the police department that the officers have lied to internal affairs, to other police officers, or in court."  Compl. ¶ 47.  Bridge then continues, without a break:  "As a result we are going to have to look through every single case, every single conviction involving officers that were on the list and file petitions to reopen those cases, and there will probably be many thousands of cases that will be brought based upon this acknowledgment by the District Attorney's Office that there are serious questions about the credibility of these officers."  Spiro Ex. A at 36:03–22.  The Complaint does not dispute the

accuracy of this statement, either.

During the *Inside Story* narration and Bridge's commentary, the documentary displays on screen portions of the *Inquirer* article discussing the Do Not Call list.  *Id.* at 35:53–36:03.  The series of shots of the article displays the photographs, date of misconduct, summary of facts, and findings by the Police Board of Inquiry of numerous different individual officers on the Do Not Call list, including Plaintiff.  *Id.* at 35:40–36:03.  Alongside Plaintiff's photograph, the documentary includes specific information indicating why she was placed on the Do Not Call list. This information reads:  "Date of Misconduct:  June 12, 2017.  Summary of Facts:  Charged with terroristic threats and simple assault.  Finding by Police Board of Inquiry/Arrest:  Arrested."  *Id.* at 35:59.  The Complaint does not dispute the accuracy of that, either.

### C.      The Instant Action

On January 7, 2020, Plaintiff commenced this action, asserting defamation claims against Defendants Roc Nation, LLC (Count I), Robert Rihmeek Williams (Count II), and Shawn Corey Carter (Count III) as well as a claim for negligent infliction of emotional distress (Count V) against these Defendants and Defendant Amazon.com LLC.  Plaintiff alleges these Defendants defamed her by "broadcasting or otherwise publishing information representing that plaintiff Saqueta Williams was a dirty and dishonest police officer and that the Philadelphia Police Department made a finding that plaintiff Saqueta Williams lied to internal affairs, to other police officers, or in court." Compl. ¶ 77, 94, 104.  Plaintiff also pleads that "the defendants owed plaintiff a common law duty not to act in a manner which they should have realized would involve an unreasonable risk of causing the plaintiff to suffer emotional distress, illness, and/or bodily harm."  *Id.* ¶ 120.

### **STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"

which requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  The Third Circuit follows a three-step process to determine the sufficiency of a complaint:  "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679) (internal citations and modifications omitted).  The Court must "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).  Third, if "'there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement [to] relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  For state of mind, factual allegations must "plausibly suggest [the defendant's] state of mind." *Iqbal*, 556 U.S. at 683.

## ARGUMENT

### I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION

Plaintiff's defamation claims are defective in multiple respects.  Plaintiff has not and cannot allege that the statements are capable of the defamatory meaning she attributes to them or are even false, as Pennsylvania law requires.  The Complaint concedes the truth of the facts provided about Plaintiff in Episode 4, namely that Plaintiff appeared on the Do Not Call list as a result of her physical altercation and subsequent criminal charges.  *See* Compl. ¶ 38; Spiro Decl. Ex. A at 35:59.  Viewed in proper context, it is implausible to suggest that any viewer would conclude that Plaintiff was placed on the Do Not Call list because she had lied instead of because of the specified criminal charges against her.  And, even if the commentary suggested that Plaintiff is a "dirty and dishonest cop," that statement is protected, non-actionable opinion that cannot give

8

rise to liability.

In addition, because the statements at issue relate to Plaintiff's role as a Philadelphia police officer, the First Amendment requires that Plaintiff plead that Defendants published the statements with actual malice, that is, with knowledge of their falsity or reckless disregard for their falsity. But the Complaint lacks allegations sufficient to make actual malice at all plausible.

  **A.**  **The Documentary As A Whole Is Not Reasonably Capable Of The Defamatory Meaning Alleged By Plaintiff And Defendants Have Not Made Any False Statement Of Fact**

    1.  <u>Taken In Context, The Statements Are Not Capable Of A Defamatory Meaning</u>

In a defamation action, "[w]hether a communication is capable of bearing a defamatory meaning is a question for the Court." *Lawson v. Pennsylvania SPCA*, 124 F. Supp. 3d 394, 410 (E.D. Pa. 2015); *see also* 42 Pa.C.S. § 8343(a); *Bell v. Mayview State Hosp.*, 853 A.2d 1058, 1061 (Pa. Super. Ct. 2004) (affirming dismissal where plaintiff's factual averments did not establish defamatory meaning). "A statement has defamatory character if it is untrue, unjustifiable, and injurious to the reputation of another." *Frankhouser v. Clearfield Cty. Career & Tech. Ctr.*, 2019 WL 1259570, at *14 (W.D. Pa. Mar. 19, 2019) (citation omitted); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) (It is a "constitutional requirement that the plaintiff bear the burden of showing falsity."). "In determining whether a statement is defamatory under Pennsylvania law, a court must examine the effect that the statement is calculated to produce and 'the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" *Leder v. Shinfeld*, 609 F. Supp. 2d 386, 402 (E.D. Pa. 2009) (internal quotation marks omitted). A communication is capable of defamatory meaning "'if it tends to harm the reputation of another so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.'" *Kuwait & Gulf Link Transp. Co.*

*v. Doe*, 216 A.3d 1074, 1085 (Pa. Super. Ct. 2019); *see also Mathias v. Carpenter*, 587 A.2d 1, 2 (Pa. Super. Ct. 1991).

To determine whether a statement is capable of defamatory meaning, "the court must view the statements in context." *Emekekwue v. Offor*, 26 F. Supp. 3d 348, 359 (M.D. Pa. 2014); *see also Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981) (court "consider the full context of the article to determine the effect the article is fairly calculated to produce"). In this regard, "the court must view the statement 'in context' with an eye toward 'the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.'" *Hudak v. Times Pub. Co.*, 534 F. Supp. 2d 546, 558–59 (W.D. Pa. 2008) (quoting *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001)).

The Complaint identifies two statements from Episode 4 that supposedly leave the viewer with the impression that Plaintiff lied or was a "dirty and dishonest police officer." Compl. ¶¶ 48–59. First, Plaintiff asserts that commentary describing the Do Not Call list as "*a list of dirty and dishonest cops*" is false and defamatory. *Id.* ¶ 46 (emphasis in original). Second, Plaintiff claims that she has been defamed by commentary stating: "*The DA's Office generated a specific list that has 66 names of police officers on it. There have been findings by the police department the officers have lied to internal affairs, to other police officers, or in court.*" *Id.* ¶ 47 (emphasis in original). When coupled with the episode title "Filthadelhia [*sic*]," the Complaint asserts that the average viewer is left with the impression that Plaintiff is a liar. *See id.* ¶¶ 49–56. The Complaint cobbles together these various snippets to arrive at the alleged defamation of Plaintiff. Taken in context, however, the statements in Episode 4 themselves defeat the Complaint.

It is implausible that reasonable viewers would understand from the documentary that

10

Plaintiff was placed on the Do Not Call list because she is a liar.  The documentary accurately reports that Plaintiff's name appeared in the Do Not Call list generated by the Philadelphia District Attorney's Office, subsequently published by the *Philadelphia Inquirer*.  On March 6, 2018, the *Philadelphia Inquirer* in fact reported that the District Attorney's Office disclosed "a list of current and former police officers whom prosecutors have sought to keep off the witness stand over allegations of misconduct."  Spiro Decl. Ex. C (*Here Are the 29 Philly Cops on the DA's 'Do Not Call' List*, Phila. Inquirer (Mar. 6, 2018), https://www.inquirer.com/philly/news/crime/29-philly-officers-do-not-call-list-krasner-20180306.html).  This list identified 29 police officers, including Plaintiff, and summarized her misconduct as "[c]harged with terroristic threats and simple assault." *Id.*  Ten days later, the *Inquirer* provided a full list of "Philadelphia's 66 problem cops" and again included Plaintiff.  Spiro Decl. Ex. D (*The Full List of Philadelphia's 66 Problem Cops*, Phila. Inquirer (Mar. 16, 2018), https://www.inquirer.com/crime/inq/full-list-philadelphias-66-problem-cops-20180316.html).  The *Inquirer* then reported that Plaintiff "was dismissed from the force after an incident in January 2017 in which she was accused of pulling a gun at a bar in North Philadelphia and threatened patrons with it."  *Id.*  The Complaint **concedes the truth** of all these facts.  *See* Compl. ¶ 29 ("Saqueta Williams was arrested by the Philadelphia Police Department" and charged with simple assault, possession an of instrument of crime, and recklessly endangering another person.); *id.* ¶ 21 (admitting that Plaintiff ceased to be a police officer in June 2017); *id.* ¶ 32 ("The Office of the Philadelphia District Attorney maintains a list identifying police officers who have histories of arrests, disciplinary actions, or providing false testimony.").

The documentary continues to report other aspects of the Do Not Call list.  Specifically, beginning in or around 35:15, the documentary commentary states:

> [Paul Solotaroff]  And in just the last couple of months, we have been learning from the District Attorney's Office, about a list of dirty and dishonest cops.

11

[WPVI "Inside Story" Clip, Feb. 13, 2018]  A court order forces the Philadelphia District Attorney to make public a list of officers so troubled prosecutors will not call them to testify about their cases.  Assault, drug dealing, mishandling evidence, lying to authorities.  And that's just a partial list of what's on there.

[Bradley Bridge]  The D.A.'s office generated a specific list that has 66 names of police officers on it.  There have been findings by the police department that the officers have lied to internal affairs, to other police officers, or in court.  And as a result, we're going to have to look through every single case, every single conviction, involving officers that were on the list and file petitions to reopen those cases.  And there will probably be many thousands of case that will be brought base upon this acknowledgement by the District Attorney's Office that there are serious questions about the credibility of these officers.

Spiro Decl. Ex. A at 35:15–36:22.  Plaintiff's photo and the summary of her charges appear at approximately 35:59 in the midst of broader discussion about the various officers on the Do Not Call list and why the District Attorney's office created the list—*i.e.*, based on their misconduct, "there are serious questions about the credibility of these officers."  *Id.*

The Complaint fails to plead a claim for defamation based on implication or innuendo for the simple reason that the inference Plaintiff sets forth is inconsistent with what the documentary shows.  "To establish defamation by innuendo, the innuendo must be warranted, justified and supported by the publication."  *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. Ct. 1992), *appeal denied* 617 A.2d 1275 (1992) (citation omitted).  The question of whether innuendo is actionable as defamatory is a question of law.  *See Sarkees v. Warner–West Corp.*, 37 A.2d 544, 546 (Pa. 1944).  The legal test to be applied is whether the challenged language could "fairly and reasonably be construed" to imply the defamatory meaning alleged by a plaintiff.  *Id.*; *Thomas Merton Ctr.*, 442 A.2d at 217 (no defamation because it "is unreasonable to infer from the entire article that [plaintiff] was actively and knowingly aiding the Soviet Union").

Whereas Plaintiff asserts that the documentary implies she is a liar because she is on the Do Not Call list, the documentary forecloses any such implication by its terms.  Indeed, the documentary makes explicit that officers were placed on the list for reasons apart from dishonesty.

12

Spiro Decl. Ex. A at 35:28–44 ("A court order forces the Philadelphia District Attorney to make public a list of officers so troubled prosecutors will not call them to testify about their cases. **Assault**, **drug dealing, mishandling evidence**, lying to authorities.  And that's just a **partial list** of what's on there.") (emphasis added).  The documentary then specifies that Plaintiff was charged with assault in making its lone reference to her.  *Id.* at 35:59.

In sum, the documentary's general references to the Do Not Call list made clear that the list as a whole defied any singular characterization—apart from the overarching instruction "Do Not Call" those listed thereon—just as its ensuing reference to Plaintiff made clear that her specific inclusion was attributable to the specified charges against her.  These express disclosures are inhospitable to any implication that Plaintiff's status on the Do Not Call list equated with her being branded a liar.  Therefore, the Complaint fails to state a claim for defamation by implication.  *See Emekekwue*, 26 F. Supp. 3d at 361 (communication not defamatory where alleged implication was contradicted by other statements in challenged communication); *ToDay's Housing v. Times Shamrock Commc'ns*, 21 A.3d 1209, 1215, 1216 (Pa. Super. Ct. 2011) (affirming summary judgment in favor of defendant in defamation suit where newspaper article "explicitly refuted" plaintiff's contention that defendant falsely implied plaintiff "was the manufacturer" of defective modular homes by naming the company that manufactured the home); *Merriweather v. Philadelphia Newspapers Inc.*, 61 Pa. D. & C. 4th 423, 438 (Com. Pl. 2002), *aff'd*, 835 A.2d 842 (Pa. Super. Ct. 2003) (granting judgment for defendant where "remainder of the article includes a passage which expressly refutes the defamatory implication that plaintiff attempts to ascribe to the limited portion of the article about which he is complaining").

Notably, the Complaint does not deny that attorneys had in fact decided to reexamine cases involving Plaintiff along with those of all other officers on the Do Not Call list, precisely as

13

reported by the documentary.  That bottom line should itself be fatal to Plaintiff's claim that she

has been harmed by the statements at issue:  there can be no plausible contention that her reputation

was damaged by niceties of **exactly why** she was on the list (whether for lying or for other

perceived misconduct), as opposed to the **conceded facts** that she **was** on the list and that she could

not be called as a witness in criminal trials without prior permission from the District Attorney's

Office as a result.  *See, e.g.*, *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 250 (2014)

("In determining whether a falsehood is material to a defamation claim, we care whether it affects

the subject's reputation.").

The Complaint thus fails to plausibly allege that any viewer, having seen Episode 4 and

the statements in context, would view Plaintiff any worse had the documentary, in fact, called her

a liar.

2.     The Complaint Fails To Adequately Plead The Falsity Of The Statements

Similarly, the Complaint fails to plead adequately the falsity that is prerequisite to the

statements at issue potentially being actionable.  "It is essential to a claim of defamation that the

statements are false." *Kurowski v. Burroughs*, 994 A.2d 611, 619 n.5 (Pa. 2010) (citing *Hepps*,

475 U.S. at 776); *Frankhouser*, 2019 WL 1259570, at *14 (requiring allegedly defamatory

statement  to  be  "untrue").    Thus,  "[p]ublication  of  an  allegedly  false  statement  is  a

necessary element of the tort of defamation." *Lekich v. Int'l Bus. Machines Corp.*, 469 F. Supp.

485, 487 (E.D. Pa. 1979) (citation omitted).  "Minor inaccuracies do not amount to falsity so long

as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Masson v. New Yorker*

*Magazine, Inc.*, 501 U.S. 496, 517 (1991)).[3]

---

[3]  Even if falsity is alleged, dismissal is appropriate where the implausibility of falsity allegations
is "clear from the face of the Complaint."  *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001).

Here, the truth of the key statements is manifest. Indeed, Plaintiff **expressly alleges** her inclusion on the Do Not Call list, over the course of nine paragraphs detailing the altercation during which Plaintiff drew her firearm and the resulting criminal charges filed against her. *See* Compl. ¶¶ 22–30. From there, Plaintiff further alleges that, "as a result of criminal charges having been lodged against the plaintiff Saqueta Williams arising from the aforementioned January 25, 2017 incident, the Office of the Philadelphia District Attorney included plaintiff Saqueta Williams on the Office of the Philadelphia District Attorney's 'Do Not Call List.'" *Id.* ¶ 38.

To be clear, the alleged defamatory statements in the Documentary relay the true facts that (1) Plaintiff was listed on the Do Not Call list, and (2) based on the underlying misconduct leading to her inclusion on the list—her arrest for brandishing her service weapon off duty during a bar altercation—the District Attorney's office deemed Plaintiff too incredible and too suspect to serve as a witness. The "gist" or "sting" of these allegations is accurate. *Marier v. Lance, Inc.*, 2009 WL 297713, at *2 (3d Cir. Feb. 9, 2009) (affirming summary judgment in favor of defendant because "the 'sting' of the statement that [plaintiffs] were escorted off the property by the police is not literally whether or not they were actually escorted off of the property by the police," but instead the accurate fact "that the police had to get involved in [the] dispute"); *ToDay's Hous.*, 21 A.3d at 1215 (citing *Masson,* 501 U.S. at 516, 517) ("[T]he 'gist' of a statement is true if the effect upon a reader is the same regardless of the inaccuracy."). As such, the Complaint does not adequately plead falsity and must be dismissed. *See, e.g., Abdellatif v. Alza Wrae Indus. Co.*, 2019 WL 1284689, at *10 (E.D. Pa. Mar. 20, 2019) (granting motion to dismiss where defendants demonstrated that the alleged defamatory statements were true); *Bell v. Sullivan*, 2017 WL 5518005, at *8 (E.D. Pa. Nov. 16, 2017) (providing an additional ground to dismiss defamation claim where "statement was actually true").

15

3.     The Statements Are Non-Actionable Opinion

Plaintiff's claims likewise fail because the specific alleged defamatory statements in the documentary are non-actionable opinions. "As Pennsylvania courts recognize, pure opinions cannot be defamatory." *McCafferty v. Newsweek Media Group, Ltd.*, 2020 WL 1862250, at \*3 (3d Cir. Apr. 14, 2020); *Emekekwue*, 26 F. Supp. 3d at 359. Indeed, "[o]pinion, without more, does not create a cause of action in libel; instead, the allegedly libeled party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Resnick v. Manfredy*, 52 F. Supp. 2d 462, 470 (E.D. Pa. 1999) (citing *Baker*, 532 A.2d at 402).

The Third Circuit distinguishes actionable from non-actionable opinions:

> Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion.

*Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985) (citing Restatement 2d of Torts § 566A); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) ("[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection."). "A simple expression of opinion occurs when the maker of the comment expresses a comment as to the person's conduct, qualifications or character after either stating the facts on which he bases his opinion or when both parties to the communication know the facts or assume their existence." *Wolgin v. Smith*, 1996 WL 745285, at \*3 (E.D. Pa. Dec. 19, 1996), *aff'd*, 135 F.3d 768 (3d Cir. 1997) (citing Restatement 2d Torts § 566, cmt. b). "Whether a particular statement or writing constitutes fact or opinion is a question of law for the court to determine in the first instance." *Elia v. Erie Ins. Exch.*, 634 A.2d 657, 660 (Pa.

Super. Ct. 1993) (citations omitted); *see also Pace v. Baker-White*, 2020 WL 134316, at \*10 (E.D. Pa. Jan. 13, 2020) (finding statements to be "non-actionable opinion" and dismissing complaint); *Balletta v. Spadoni*, 47 A.3d 183, 200 (Pa. Commw. Ct. 2012) (dismissing because allegedly defamatory remarks were non-actionable statements of opinion).

The commentary in Episode 4 characterizing the Do Not Call list as "a list of dirty and dishonest cops" is precisely the type of non-actionable opinion that is insusceptible to disproof and cannot sustain a defamation claim.  Again, the context of these statements is fatal to Plaintiff's allegations.  After discussing Philadelphia's rich history of scandal and corruption, including prior police corruption probes and the former Distract Attorney's guilty plea for accepting bribes, the commentary reveals the existence of the Do Not Call list and surveys a range of police officers included on the list for misconduct such as assault, making false statements in a police report, involuntary manslaughter, and driving under the influence.  *See* Spiro Decl. Ex. A at 34:19–36:22. The description of this list as one including "dirty and dishonest cops" cannot be constructed, as the Complaint attempts, as accusing Plaintiff of lying.  *See* Compl. ¶ 55.  To the contrary, it offers one investigator's opinion and characterization of the Do Not Call list based on disclosed facts, including prior law enforcement corruption scandals plaguing Philadelphia as well as the summary of Plaintiff's undisputed criminal charges.  *See* Spiro Decl. Ex. A at 34:19–36:22.  Viewers are thus free "to draw the desired conclusion for themselves."  *Hudak*, 534 F. Supp. 2d at 561.  By basing its allegations on non-actionable opinion, the Complaint wanders astray and into terrain that is constitutionally forbidden.

### B.  The Complaint Fails To Plead That Defendants Acted With Actual Malice

Plaintiff's claims also should be dismissed because the First Amendment requires Plaintiff to plead "actual malice" with plausibility, and Plaintiff has not come close.

The Supreme Court has long held the First Amendment prohibits public officials and public figures from prevailing absent proof by clear and convincing evidence that allegedly offending statements were published with "actual malice," that is, with knowledge of their falsity, or despite a "high degree of awareness" of their "probable falsity." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *McCafferty*, 2020 WL 1862250, at *4 ("To show defamation, a public figure (even if just a 'limited-purpose public figure' like [plaintiff]) must show that the publisher acted with 'actual malice.'").  Whether a plaintiff qualifies as a public official or public figure poses a question of law for this Court.  *Marcone v. Penthouse Int'l Magazine For Men*, 754 F.2d 1072, 1081 & n.4 (3d Cir. 1985).

The actual malice "standard is a subjective one, based on the defendant's actual state of mind." *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089 (3d Cir. 1988).  To meet the actual malice standard, a plaintiff must show that the defendant knew the challenged statements were false or "in fact entertained serious doubts as to the[ir] truth" at the time of publication.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Mere "[f]ailure to investigate, without more, does not demonstrate actual malice."  *Marcone*, 754 F.2d at 1089 (citing *St. Amant*, 390 U.S. at 733).  Claims that fail to meet the high constitutional bar should be dismissed prior to any discovery.  The standard is designedly exacting because it vindicates the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation" and the imperative "to allow publishers the 'breathing space' needed to ensure robust reporting on public figures and events."  *Pace*, 2020 WL 134316, at *11 n.15 (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016)).

1.    <u>The Actual Malice Standard Applies To Plaintiff's Defamation Claims</u>

Because Plaintiff qualifies as either a public official or a limited-purpose public figure, the

actual-malice standard applies to her claims.

First, because the challenged statements concern Plaintiff's role as a police officer, Plaintiff

qualifies as a "public official."  As the Supreme Court emphasized in *New York Times v. Sullivan*,

the "right of free public discussion of the stewardship of public officials" has been "a fundamental

principle of the American form of government."   376 U.S. at 275.   "Courts have consistently

treated police officers as public officials within the meaning of *New York Times*."  *Coughlin v.*

*Westinghouse Broadcasting & Cable, Inc.*, 603 F. Supp. 377, 385–86 (E.D. Pa. 1985), *aff'd*, 780

F.2d 340 (3d Cir. 1985) (citing, *e.g.*, *Time, Inc. v. Pape*, 401 U.S. 279, 284 (1971)).  Courts do so

because "the public has an independent interest in the qualifications and performance of" police

officers, who "possess[] both the authority and the ability to exercise force," and the "[m]isuse of

[t]his authority can result in significant deprivation of constitutional rights and personal freedoms,

not to mention bodily injury and financial loss."  *Id.* (quoting *Gray v. Udevitz*, 656 F.2d 588, 591

(10th Cir. 1981)).   "The strong public interest in ensuring open discussion and criticism of [a police

officer's] qualifications and job performance warrant the conclusion that [the officer] is a public

official."  *Coughlin*, 603 F. Supp. at 386.

Because the challenged statements concern these very subjects and Plaintiff's "Do Not

Call" status as a government official on a list maintained by public prosecutors, *see supra*, at 5–7,

Plaintiff must plead that Defendants published the statements with actual malice.[4]

---

[4]    The actual malice standard applies notwithstanding that Plaintiff is no longer a Philadelphia
police officer.  *See, e.g.*, *Rosenblatt v. Baer*, 383 U.S. 75, 87 n.14 (1966); *Mercer v. City of Cedar
Rapids*, 308 F.3d 840, 848 (8th Cir. 2002) (former police officer was "public figure" for statements
regarding her termination); *Pierce v. Capital Cities Commc'ns, Inc.*, 427 F. Supp. 180 (E.D. Pa.

In addition, Plaintiff qualifies as a limited-purpose public figure.  Whether a plaintiff is a limited purpose public figure depends on "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy." *McDowell v. Paiewonsky*, 769 F.2d 942, 948 (3d Cir. 1985).  On these facts, Plaintiff plainly qualifies as a limited-purpose public figure.

As to the public-controversy element, police misconduct and injustice within the criminal justice system are public controversies.  *See, e.g.*, *Baldassare v. State of N.J.*, 250 F.3d 188, 196–97 (3d Cir. 2001) (speech related to "an internal investigation into the alleged criminal actions of public employees"); *O'Donnell v. Yanchulis*, 875 F.2d 1059, 1061 (3d Cir. 1989) ("[A]llegations of corrupt practices by government officials are of the utmost public concern."); *Rubin v. CBS Broad. Inc.*, 170 A.3d 560, 563 (Pa. Super. Ct. 2017) (television news report on school police officer's termination matter of public concern); *Day v. Borough of Carlisle*, 2006 WL 1892711, at *5 (M.D. Pa. July 10, 2006) ("allegations of misconduct and mismanagement within the Police Department" are of public concern).

*Free Meek* deals with abuse, misconduct, and injustice within the Philadelphia criminal justice system and police department specifically, told in part through the story of Meek Mill and the Do Not Call list.  *See supra*, at 3–7.  Misconduct and criminal activity involving the police are prototypical "public controversies" that concern some segment of the general public.  As such, the alleged defamation here "involves a public controversy." *McDowell*, 769 F.2d at 948.

As to Plaintiff's involvement in the instant public controversy, this too confirms Plaintiff's status as a public figure.  Although a plaintiff's participation in the public controversy usually must

---

1977), *aff'd*, 576 F.2d 495 (3d Cir. 1978), *cert. denied*, 439 U.S. 861 (1978) (statements concerning conduct of former mayor and port authority chairman required actual malice).

be voluntary, when the plaintiff "undertakes a course of conduct that invites attention," "the voluntariness requirement may be satisfied even though an individual does not intend to attract attention." *Id.* (finding architect-engineer who worked on public projects was a "public figure" when his work on several projects drew public scrutiny prior to the alleged defamation); *Marcone*, 754 F.2d at 1085–87 (finding plaintiff public figure for purposes of the controversy—a drug-smuggling operation—where he actively maintained relationships with his co-conspirators and his involvement in the scheme and criminal indictment were widely reported by the Philadelphia media prior to the defamation at issue).

Here, in June 2017, Plaintiff drew her weapon off duty in a public altercation, resulting in her indictment for multiple offenses including assault, possession of an instrument of crime, and reckless endangerment, Compl. ¶ 29, thereby inviting attention and also prompting disciplinary action and her placement on the Do Not Call list, Compl. ¶ 38.  At the time, Plaintiff's conduct and indictment were the subject of wide coverage by the Philadelphia news media, generating numerous new stories[5] and an official police inquiry that ultimately led to her termination.  Like the plaintiffs in *McDowell* and *Marcone*, Plaintiff through her own actions engaged in a course of conduct that was "bound to attract attention and comment" when she, while off duty as a police officer, drew her weapon to threaten others.  *See Marcone*, 754 F.2d at 1085–87 ("Marcone

---

[5]  *See* Spiro Decl. Exs. C, D; *see also Police: Officer Arrested after Threatening People with Gun at Bar*, 3CBS Philly (June 9, 2017), https://philadelphia.cbslocal.com/2017/06/09/officer-arrested-to-be-dismissed; *Philly Cop Arrested for Off-Duty Bar Incident*, Phila. Inquirer (June 9, 2017), https://www.inquirer.com/philly/news/philly-cop-arrested-for-off-duty-bar-incident-20170609.html; *Cop Charged after Making Gun Threats: Philadelphia Police*, Patch.com (June 9, 2017), https://patch.com/pennsylvania/philadelphia/cop-charged-after-making-gun-threats-philadelphia-police; *Philly Police Officer Allegedly Pulled Out Gun in Off-Duty Bar Incident*, Philly Voice (June 11, 2017), https://www.phillyvoice.com/philly-police-officer-allegedly-pulled-out-gun-duty-bar-incident; *Philadelphia Police Officer Accused of Making Threats, Pointing Gun*, 6ABC (June 20, 2017), https://6abc.com/news/philadelphia-cop-accused-of-making-threats-pointing-gun/2078645.

engaged in a course of conduct that was bound to attract attention and comment."); *see also Schiavone Const. Co.*, 847 F.2d at 1079 ("[Q]uestions concerning Schiavone and SCC were in the public eye long before Time's challenged article appeared.").  Because both of these inquiries are satisfied based on the pleadings here, Plaintiff also qualifies as a limited-purpose public figure whose defamation claim must meet the actual malice standard.

2.      Plaintiff Has Not Plausibly Pleaded Actual Malice

"Actual malice" requires a plaintiff to show "subjective awareness" of the probable falsity of a statement.  *McDowell*, 769 F.2d at 951; *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.) (requiring "a subjective belief that the statement was false when made").  Thus, "[i]n the wake of *Iqbal* and *Twombly*, adequately pleading actual malice is an onerous task [and] it is one that regularly results in early dismissal of an action." *Pace*, 2020 WL 134316, at *11 (citations and quotation marks omitted) (dismissing with prejudice plaintiff's defamation claims).  To plead actual malice, a plaintiff must allege facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge or reckless disregard of falsity.  *McCafferty*, 2020 WL 1862250, at *4; *Lee v. TMZ Prods., Inc.*, 710 F. App'x 551, 560 (3d Cir. 2016) (affirming Rule 12(b)(6) dismissal of defamation claim for, *inter alia*, failure to plausibly plead actual malice); *Michel*, 816 F.3d at 702; *Pace*, 2020 WL 134316, at *11 n.15; *Berkery v. Gudknecht*, 2018 WL 3549228, at *3 (E.D. Pa. July 24, 2018), *aff'd* 763 F. App'x 288 (3d Cir. 2019) (dismissing defamation claim because plaintiff "does not contend that [defendant] acted with actual malice, let alone provide any factual support for such an allegation"); *Earley v. Gatehouse Media Penn. Holdings, Inc.*, 2015 WL 1163787, at *2 (M.D. Pa. Mar. 13, 2015) (dismissing with prejudice absent factual support).  "The First Amendment requires this demanding standard."  *McCafferty*,

2020 WL 1862250, at *4.

For a claim of defamation-by-implication, a plaintiff must plead not only that the defendant knew of or recklessly disregarded the falsity of the statement but also that the defendant intended to communicate the specific alleged defamatory meaning. *Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 92 (3d Cir. 2013). "The subjective nature of this inquiry requires that there be some evidence showing, directly or circumstantially, that the defendants themselves understood the potential defamatory meaning of their statement." *Id.* at 93.

Here, Plaintiff's allegations of actual malice are nothing more than a "threadbare recital" of malice "supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, that lack concrete allegations to support them. Plaintiff alleges only that Defendants: "broadcast[ed] or otherwise publish[ed] information . . . without conducting a reasonable investigation as to the truth of the representations," Compl. ¶¶ 77, 94, 104; "caused the aforementioned communication . . . to be published and circulated with a reckless disregard for the truth," *id.* ¶¶ 78, 95, 105; "published and circulated the aforementioned [*sic*] Communication . . . with a high degree of awareness of the probable falsity of the statements," *id.* ¶¶ 79, 96, 106; and "published and circulated the aforementioned [*sic*] Communication . . . despite having entertained serious doubts as to the truth of the publication," *id.* ¶¶ 80, 97, 107. But Plaintiff does not offer any factual basis for those conclusions and alleges no facts that, if proven, would establish that Defendants published the alleged defamatory statements with a "subjective belief" or "subjective awareness" that any statement specifically about Plaintiff was false. *See Tucker*, 237 F.3d at 286; *McDowell*, 769 F.2d at 951. Plaintiff merely parrots the standard, adding only a cursory allegation that Defendants failed to investigate, which repeatedly has been deemed insufficient. *See, e.g.*, *Marcone*, 754 F.2d at 1089 ("Failure to investigate, without more, does not demonstrate actual malice.").

Likewise, to the extent the Complaint purports to allege a claim for defamation-by-implication, not only does the Complaint lack any allegations that Defendants intended for the audience to believe specifically that Plaintiff was a "dirty and dishonest cop" who had lied to department superiors or the courts; but it establishes the absence of such an intent.  Indeed, the documentary itself (as pleaded into the Complaint) discloses the conceded basis for Plaintiff's appearance on the Do Not Call list, while nailing the key facts that she was on the list, that she was criminally charged, and that she and her cases were deemed suspect.  *See supra*, at 5–7.  Especially considering that the documentary's references to Plaintiff were fleeting fragments of a five-part series and were grounded in hard, incontestable facts, it is implausible that publishers of this documentary intended to convey that Plaintiff lied to internal affairs or in court.   *Kendall*, 716 F.3d at 92.  If nothing else, the fact that Plaintiff grasps to mix and match one snippet with another *en route* to her strained and marginal theory of defamation (whereby she concedes her inclusion on the Do Not Call list while quibbling about why she was on it) should confirm that reasonable, diligent producers would not have known they were causing her offense.  That alone requires dismissal under the First Amendment.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's negligent infliction of emotional distress ("NIED") claim is equally foreclosed by the First Amendment, which is indifferent to whether the same basic tort is styled in terms of "defamation" or something else.  *See, e.g.*, *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939, 942 (Tex. 1988) ("The constitutional considerations [of defamation] are the same with respect to the allegations by a public official or figure of negligent infliction of emotional distress."); *Govito v. W. Jersey Health Sys., Inc.*, 753 A.2d 716, 731–32 (N.J. Super. Ct. App. Div. 2000) (similar); *Hoppe v. Hearst Corp.*, 53 Wash.

App. 668, 675 (Wash. Ct. App. 1989) (similar); *Parnell v. Booth Newspapers, Inc.*, 572 F. Supp. 909, 918 (W.D. Mich. 1983) (similar).  The same First Amendment strictures—including the protection of opinion and the requirement to show actual malice—have been held to apply to any tort claims that seek to hold a publisher liable for reputational injury resulting from public expression, whether couched in terms of defamation or otherwise.  *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 451 (2011); *Hustler Magazine, Inc.*, 485 U.S. at 56.  As such, this Plaintiff's NIED claim is no less subject to dismissal on First Amendment grounds than her defamation claim is, as discussed *supra*.

What is more, the NIED claim fails because Pennsylvania does not even recognize any such cause of action based on an allegedly defamatory publication.  *See Salerno v. Philadelphia Newspapers, Inc.*, 546 A.2d 1168, 1173 (Pa. Super. Ct. 1988) (defamation/NIED case based on allegedly-defamatory newspaper article, affirming summary judgment in favor of defendants because the "facts as alleged … simply do not state a cause of action for the type of liability recognized in this state in a negligent infliction of emotional distress action").  Nor, as further explained in the brief of defendant Amazon.com LLC, in which Defendants here join, does Plaintiff allege anything along the lines of the special relationship that would be required for Defendants to be held to any particular duty of care here.  *See Toney v. Chester Cty. Hosp.*, 36 A.3d 83, 94–95, 99 (Pa. 2011); *Parks Miller v. Cantorna*, 2016 WL 2752633, at \*12 (M.D. Pa. May 11, 2016), *aff'd on other grounds*, 702 F. App'x 69 (3d Cir. 2017) (dismissing speech-based NIED claim where no special relationship between a plaintiff and defendant exists).

## **CONCLUSION**

For the foregoing reasons, Roc Nation, LLC, Robert Rihmeek Williams, and Shawn Corey Carter respectfully request that the Court dismiss with the prejudice the Complaint against them.

Dated:  April 15, 2020

QUINN EMANUEL URQUHART & SULLIVAN

/s/ Alex Spiro

Alex Spiro (*pro hac vice*)
Ellyde R. Thompson (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor,
New York, New York 10010
Telephone: 212.849.7000
alexspiro@quinnemanuel.com
ellydethompson@quinnemanuel.com

Derek L. Shaffer  (*pro hac vice*)
QUINN EMANUEL URQUHART &
 SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone:  202-538-8000
derekshaffer@quinnemanuel.com

Ashley E. Shapiro (I.D. No. 209290)
BUCHANAN INGERSOLL &
ROONEY PC
50 S. 16th Street, Suite 3200
Philadelphia Pennsylvania 19102
Telephone: 215.665.8700
Fax: 215.665.8760
ashley.shapiro@bipc.com

*Attorneys for Defendants Roc Nation,*
*LLC, Robert Rihmeek Williams, and*
*Shawn Corey Carter*